UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------- X

JOHNY THOMAS and JOHNNY
FIELDS, individually and on behalf of a
class of all others similarly situated,

                **Plaintiffs,**

    - against -

JPMORGAN CHASE & CO. and
CHASE HOME FINANCE, LLC,

              **Defendants.**

------------------------------------------------- X

**OPINION AND ORDER**

**10 Civ. 8993 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

Johny Thomas and Johnny Fields (together, "plaintiffs") bring this action on behalf of themselves and a putative class of all others similarly situated against JPMorgan Chase & Co., Inc. ("JP Morgan") and Chase Home Finance, LLC ("Chase"), a wholly-owned subsidiary of JP Morgan (together, "defendants"), seeking declaratory relief, injunctive relief, damages, and attorneys' fees, alleging (1) breach of contract; (2) promissory estoppel; (3) breach of the covenant of good faith and fair dealing; (4) fraud; (5) negligent misrepresentation; (6) negligence; (7) violation of the New York Deceptive Practices Act; (8) violation of the New Jersey

-1-

Consumer Fraud Act; and (9) violation of the Fair Debt Collection Practices Act.

Defendants now move to dismiss all claims pursuant to Federal Rule of Civil

Procedure 12(b)(1) for lack of subject matter jurisdiction due to plaintiffs' lack of

standing and Rule 12(b)(6) for failure to state a claim.[1]  For the reasons discussed

herein, defendants' motion is granted in part and denied in part.

## II.      BACKGROUND[2]

### A.      Home Affordable Mortgage Program

In response to the financial crisis Congress enacted the Emergency

Economic Stabilization Act of 2008, which in turn authorized the Secretary of the

Treasury to establish the Troubled Asset Relief Program ("TARP").[3]  TARP

directed the Secretary of the Treasury to "implement a plan that seeks to maximize

assistance for homeowners" and allowed the Secretary to "use loan guarantees and

credit enhancements to facilitate loan modifications to prevent avoidable

---

[1]      *See* Memorandum of Law in Support of JPMorgan Chase & Co. and Chase Home Finance, LLC's Motion to Dismiss Amended Complaint ("Def. Mem.") at 1.

[2]      All alleged facts are drawn from the relevant portions of the Amended Complaint, and are taken to be true for the purposes of this motion. *See Ashcroft v. Iqbal*, 556 U.S. —, 129 S.Ct. 1937, 1943 (2009).

[3]      Pub. L. No. 110-343, 122 Stat. 3765 (codified as amended at 12 U.S.C. §§ 5201-5261).

foreclosures."[4]  Under this authority, the Department of the Treasury announced

the "Making Home Affordable Program" in February 2009, which included the

"Home Affordable Mortgage Program" ("HAMP").  HAMP was aimed at helping

homeowners who were in, or were at immediate risk of being in, default on their

home loans by reducing monthly payments to sustainable levels.

Under HAMP, JP Morgan entered into a Service Participation

Agreement ("SPA") with Fannie Mae in July 2009, acting as an agent of the U.S.

Department of the Treasury.[5]  The SPA states that it "shall inure to the benefit of

and be binding upon the parties to the Agreement and their permitted successors in

interest."[6]  In entering into the SPA, JP Morgan agreed to "perform the loan

modification and other foreclosure prevention services"[7] for "all mortgage loans it

---

[4]      12 U.S.C. § 5219(a)(1).

[5]      *See* Commitment to Purchase Financial Instrument and Service
Participation Agreement for the Home Affordable Mortgage Program under the
Emergency Economic Stabilization Act of 2009 ("SPA"), Ex. E to 3/28/11
Declaration of Defendants' Attorney Jessica L. Kaufman in Support of JPMorgan
Chase & Co. and Chase Home Finance, LLC's Motion to Dismiss Amended
Complaint ("Kaufman Decl."), at 11.  Although neither the SPA nor plaintiffs'
original mortgage agreements were attached to the Amended Complaint, the Court
may consider these documents because the Amended Complaint "relies heavily on
[their] terms and effects," rendering them "integral" to the Amended Complaint.
*Chambers v Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

[6]      SPA § 10.F.

[7]      *Id.* § 1.A.

services, whether it services such mortgage loans for its own account or for the account of another party."[8]

## B.    Loan Modification

To obtain a home loan modification under HAMP, the borrower applying for modification initially provides the lender with required documentation.  If the borrower is eligible, the lender reduces the monthly mortgage payment to thirty-one percent of the homeowner's gross monthly income.  The homeowner participates in a three-month Trial Period Plan ("TPP"), based on the new mortgage payment.  In executing the TPP agreement, which is labeled "Step One of a Two-Step Documentation Process," the borrower represents that

> I am unable to afford my mortgage payments for the reasons indicated in my Hardship Affidavit[9] and as a result (i) I am either in default or believe that I will be in default under the Loan Documents in the near future, and (ii) I do not have the sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future.[10]

If the borrower does not provide all the required documentation required by the

---

[8]     *Id.* § 2.A.

[9]     The Hardship Affidavit is used to verify the borrower's financial hardship in connection with an application for a loan modification.

[10]     SPA § 1.A.

lender, or if the lender does not provide the borrower with an executed copy of a modification agreement, "the Loan Documents will not be modified . . . and the lender will have all of the rights and remedies provided in the Loan Documents," including instituting foreclosure proceedings.[11]  The lender "will not be obligated or bound to make any modification of the Loan Documents if the lender determines that [the borrower does] not qualify."[12]  Payments made under the TPP do "not constitute a cure of [the borrower's] default under the Loan Documents unless such payments are sufficient to completely cure [the borrower's] entire default."[13]  The borrower agrees that "all terms and provisions of the Loan Documents remain in full force and effect; nothing in [the TPP] shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents."[14]  Following successful completion of the TPP, including final approval by the lender, the lender will permanently modify eligible mortgages.

### C.    Plaintiff Thomas

---

[11]    *Id.* § 2.F.

[12]    *Id.* § 2.G.

[13]    *Id.* § 2.E.

[14]    *Id.* § 4.D.

In November 2005, Chase granted Thomas and his wife (who is not a party to this action) a loan secured by a mortgage on their home. In October 2009, Thomas and his wife applied for a HAMP modification of their loan. By letter dated October 23, 2009, Chase informed Thomas that he and his wife were "eligible for the federal government's Home Affordable Modification Program" and that to "accept this offer and enter into the Home Affordable Mortgage Program, [Mr. Thomas] must sign and return one copy of the enclosed Trial Period Plan – along with [the] first trial payment in the amount of $2,669.78 — by no later than NOVEMBER 22, 2009."[15] Thomas and his wife executed the TPP on November 13, 2009, and timely forwarded the executed TPP to Chase.[16]

Thomas and his wife timely made all three trial payments. Following the third payment, due on February 1, 2010, Thomas contacted Chase regarding the status of his permanent modification and was informed by an agent that the application was still being reviewed and that Thomas should continue to make trial payments.[17] Thomas and his wife continued to make payments of sums

---

[15]    Amended Complaint ("FAC") ¶¶ 183-184 (modifications and emphasis in original).

[16]    *See id.* ¶ 185. *See also* Thomas Home Affordable Modification Trial Period Plan ("Thomas TPP"), Ex. E to FAC, at 1.

[17]    *See* FAC ¶ 190.

corresponding to those outlined in the TTP in March, April, and May of 2010.

These subsequent payments have not been credited to Thomas's account.[18]

By letter dated April 15, 2010, Chase informed Thomas and his wife

that documentation pertaining to the application had been received, and instructed

them to "continue making [their] trial period payments on time."  The letter states

that although more documentation may be required, if that was not the case,

Thomas would "be contacted by [Chase] in the near future with a decision on

[their] modification request."[19]  However, by letter dated April 14, 2010, the

preceding day, Chase informed Thomas that their "request for modification has

been declined" because the "[a]ccount does not meet investor requirements at this

time.  If you are able to increase income or reduce your expenses you may apply

for a repayment plan."[20]  Chase never informed Thomas what specific requirements

were not met, and Thomas believes all requirements were met.[21]  Thomas stopped

---

[18]     *See id.* ¶ 191.

[19]     4/15/10 Document Receipt Confirmation Letter from Chase to
Thomas, Ex. F to FAC.

[20]     4/14/10 Workout Request Declined Letter from Chase to Thomas, Ex.
G to FAC.

[21]     *See* FAC ¶ 194.

making payments in June 2010 because Chase "refused to apply the payments."[22]

On August 2, 2010, Thomas and his wife received a notice of intent to foreclose,

"stating that their loan had been in default since March 1, 2010."[23]

### D.    Plaintiff Fields

In 2006, Fields took out a mortgage on his home with Washington

Mutual.  In 2008, that mortgage was assigned to Chase.  In or about December

2009, Fields contacted Chase about obtaining a loan modification.  A Chase agent

informed Fields that he would be placed in a trial modification plan beginning in

March 2010, and instructed Fields to miss his January and February payments in

order to maintain eligibility for a modification.

By letter dated January 18, 2010, Chase informed Fields that "in order

for [Chase] to continue processing this workout option, we need to confirm your

acceptance of the terms and conditions outlined in [the TPP]."[24]  To accept the TPP

Fields had to return the agreement with additional documentation by February 18,

2009.  Fields subsequently made trial payments for March, April, and May in

---

[22]    *Id.* ¶ 195.

[23]    *Id.* ¶ 196.  The notice of intent to foreclose that Chase allegedly sent
to Thomas has not been included as an exhibit to the Amended Complaint.

[24]    1/18/10 Trial Period Agreement Letter from Chase to Fields ("Fields
TPP Letter"), Ex. H to FAC, at 1.

accordance with the TPP.[25]  After the third payment, a Chase agent told Field that his modification application was still being processed.

In May 2010, Chase sent Fields a letter stating that his modification application had been denied due to insufficient documentation.[26]  Fields contacted Chase, explaining that he had indeed submitted the proper documentation, after which Chase sent him a new TPP for the period from June to August 2010.[27] Fields made all three trial payments under this second TPP, and called Chase after the third payment to inquire about his modification application.  Chase informed Fields that his application was still being processed.[28]

Fields subsequently called Chase a second time.  During this second conversation, a Chase agent named Adams informed Fields that the modification application had been denied due to insufficient documentation, and that Fields was "permanently ineligible for a HAMP modification but could be eligible for [Chase's] in-house modification."[29]  Although Fields had previously submitted a

---

[25]     *See* FAC ¶ 207.

[26]     *See id.* ¶ 208.  The original letter has not been attached as an exhibit to the Amended Complaint.

[27]     *See id.* ¶¶ 209, 211.

[28]     *See id.* ¶ 212.

[29]     *Id.* ¶ 214.

hardship affidavit and IRS form 4506-T, which would allow Chase to request copies of Fields's tax records, Adams informed Fields that these were missing from his file.  Adams also informed Fields that he "did not need to make additional payments because all of his previous payments would be capitalized back into the loan once he was approved."[30]

By letter dated August 16, 2010, Chase informed Fields that the TPP offer had expired.  The reason indicated in the letter was that Chase was "unable to offer you a Home Affordable Modification because you did not provide us with the documents we requested.  A notice, which listed the specific documents we needed and the time frame required to provide them, was sent to you previously."[31]  Fields had sent Chase all information Chase had requested.[32]

On December 2, 2010, Chase sent Fields a notice of intent to foreclose, stating that Fields had been in default on his loan since January 1, 2010.[33]  The correspondence included a letter advising Fields that Chase

---

[30]     *Id.* ¶ 215.

[31]     Making Home Affordable Trial Period Plan Offer – Notice of Expiration, Ex. I to FAC, at 1.

[32]     *See* FAC ¶ 217.

[33]     *See id.*  The notice of intent to foreclose is not included as an exhibit.

"believe[d] that [Fields's] home loan may be eligible for a loan workout."[34]

On January 4, 2011, a Chase agent told Fields that Chase was, indeed, in possession of the hardship affidavit that Fields had previously sent to Chase. This agent told Fields that Chase had assigned the case to a representative who would contact Fields.[35]   On January 6, 2011, a Chase agent named McRory informed Fields that Fields's house "was in foreclosure, but that the documents had not been processed properly and that a Chase employee named LaToya Myers was reviewing Fields's file, and that Fields should call her."[36]   On or about January 6, 2001, Fields called Myers, who stated that she was not assigned to Fields's case and that Fields should not be calling her directly.[37]

## III.   LEGAL STANDARD

### A.   Standing

Article III of the Constitution limits a federal court's jurisdiction to actual "cases and controversies."[38]   Constitutional standing "is the threshold

---

[34]   12/2/10 Letter from Chase to Fields, Ex. J to FAC, at 1.

[35]   *See* FAC ¶ 220.

[36]   *Id.* ¶ 221.

[37]   *See id.* ¶ 222.

[38]   *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

-11-

question in every federal case, determining the power of the court to entertain the suit."[39]   There are three constitutional requirements that a plaintiff must satisfy in order to establish standing: (1) injury-in-fact – an injury that is "concrete and particularized" and is "actual or imminent, not conjectural or hypothetical," (2) an injury that is fairly traceable to the challenged action, and (3) an injury that will likely be redressed by a favorable ruling of the court.[40]   A putative class representative lacks standing to bring a claim if he or she did not suffer the injury that gives rise to that claim.[41]   Where multiple claims are brought, at "least one *named* plaintiff must have standing to pursue each claim alleged."[42]

---

[39]     *Warth v. Seldin*, 422 U.S. 490, 498 (1975).

[40]     *Lujan*, 504 U.S. at 561.  *Accord Denney v. Deutsche Bank AG*, 443 F.3d 253, 263 (2d Cir. 2006); *New York Pub. Interest Research Grp. v. Whitman*, 321 F.3d 316, 325 (2d Cir. 2003).  *See also Allen v. Wright*, 468 U.S. 737, 751-52 (1984) (noting that the three standing requirements share a common goal – to ensure that the judiciary, and not another branch of government, is the appropriate forum in which to address a plaintiff's complaint).

[41]     *See Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996) (dismissing claims because plaintiffs with one type of injury lack standing to challenge a different, though perhaps related, injury, because "standing is not dispensed in gross").

[42]     *In re Salomon Analyst Level 3 Litig.*, 350 F. Supp. 2d 477, 496 (S.D.N.Y. 2004).  *Accord Griffin v. Dugger,* 823 F.2d 1476, 1483 (11th Cir. 1987) ("a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim"); *In re Global Crossing, Ltd. Sec. Litig.*, 313 F. Supp. 2d 189, 205 (S.D.N.Y. 2003) (same).

### B.  Ripeness

"A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all."[43] However, "[t]hat the liability may be contingent does not necessarily defeat jurisdiction of a declaratory judgment action.  Rather, courts should focus on the practical likelihood that the contingencies will occur."[44]

### C.  Rule 12(b)(6) Motion to Dismiss

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court evaluates the sufficiency of the complaint under the "two-pronged approach" promulgated by the Supreme Court in *Ashcroft v. Iqbal.*[45] *First*, a court "'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'"[46] "Threadbare recitals of the elements of a cause of action, supported by mere

---

[43]    *Texas v. United States*, 523 U.S. 296, 300 (1998) (quotation marks omitted).

[44]    *E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.*, 241 F.3d 154, 177 (2d Cir. 2001).

[45]    129 S.Ct. at 1950.

[46]    *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Iqbal*, 129 S. Ct. at 1950).  *Accord Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010).

conclusory statements, do not suffice" to withstand a motion to dismiss.[47]  *Second*,

"[w]hen there are well-pleaded factual allegations, a court should assume their

veracity and then determine whether they plausibly give rise to an entitlement for

relief."[48]  To survive a Rule 12(b)(6) motion to dismiss, the allegations in the

complaint must meet a standard of "plausibility."[49]  A claim is facially plausible

"when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."[50]

Plausibility "is not akin to a probability requirement;" rather, plausibility requires

"more than a sheer possibility that a defendant has acted unlawfully."[51]

### D.  Federal Rule of Civil Procedure 9(b)

Rule 9(b) provides that "the circumstances constituting fraud . . . shall

be stated with particularity."  To satisfy the particularity requirement, "the

complaint must: "(1) specify the statements that the plaintiff contends were

---

[47]      *Iqbal*, 129 S.Ct. at 1949 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[48]      *Id.* at 1950.  *Accord Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010).

[49]      *Twombly*, 550 U.S. at 564.

[50]      *Iqbal*, 129 S. Ct. at 1949 (quotation marks omitted).

[51]      *Id.* (quotation marks omitted).

-14-

fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."[52] "While traditionally associated with claims of securities fraud, Rule 9(b) has been applied to claims of consumer fraud as well as claims relating to consumer protection statutes."[53]

Although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally,"[54] this rule should not be "mistaken for license to base claims of fraud on speculation and conclusory allegations."[55]

> [P]laintiffs must plead facts that give rise to a strong inference of intent. The requisite "strong inference" of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.[56]

### E.   Leave to Amend

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that other than amendments as a matter of course, "a party may amend its pleading only

---

[52]   *Lerner v. Fleet Bank N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (quotation marks omitted).

[53]   *Meserole v. Sony Corp. of America*, No. 08 Civ. 8987, 2009 WL 1403933, at *3 (S.D.N.Y. May 19, 2009).

[54]   Fed. R. Civ. P. 9(b).

[55]   *Shields v. Cititrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).

[56]   *Lerner*, 459 F.3d at 290-91 (quotation marks and citations omitted).

with the opposing party's written consent or with the court's leave."[57]  Although

"[t]he Court should freely give leave when justice so requires,"[58] it is "within the

sound discretion of the district court to grant or deny leave to amend."[59]  "When

 a motion to dismiss is granted, the usual practice is to grant leave to amend the

complaint."[60]  However, "it is well established that leave to amend a complaint

need not be granted when amendment would be futile."[61]

## IV.    APPLICABLE LAW[62]

### A.    Breach of Contract

To survive a motion to dismiss a breach of contract claim, the

complaint must allege "(1) a contract between the parties; (2) a breach of that

contract; (3) damages flowing therefrom, and (4) that the party stating the claim

---

[57]      *Slayton v. American Express Co.*, 460 F.3d 215, 226 n.10 (2d Cir.
2006) (quotation marks omitted).

[58]      Fed. R. Civ. P. 15(a)(2).

[59]      *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir.
2007).

[60]      *Hayden v. County of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999).

[61]      *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003).

[62]      With the exception of plaintiffs' claim under the New York Deceptive
Practices Act, New Jersey law applies to all of the claims at issue in this motion.

performed its own contractual obligation."[63]  "Government contracts often benefit the public, but individual members of the public are treated as incidental beneficiaries unless a different intention is manifested."[64]

**B.    Promissory Estoppel**

A claim for "[p]romissory estoppel is made up of four elements: (1) a clear and definite promise; (2) made with the expectation that the promisee will rely on it; (3) reasonable reliance; and (4) definite and substantial detriment."[65]

**C.    Breach of Covenant of Good Faith and Fair Dealing**

"Every party to a contract . . . is bound by a duty of good faith and fair dealing in both the performance and enforcement of the contract."[66]  New Jersey has adopted the Uniform Commercial Code definition of "good faith," defining it as "honesty in fact and the observance of reasonable commercial standards of fair

---

[63]     *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007) (citing *Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 210 F. Supp. 2d 552, 561 (D.N.J. 2002)).

[64]     Restatement (Second) of Contracts § 313(2) cmt. a (1981).

[65]     *Toll Bros. v. Brotherhood of Chosen Freeholders of Burlington*, 194 N.J. 223, 253 (2008).

[66]     *Elliott & Franz, Inc. v. Ingersoll-Rand Co.*, 457 F.3d 312, 328 (3d Cir. 2007) (quoting *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 182 N.J. 210, 224 (2005)).

dealing in the trade."[67]  The covenant of good faith and fair dealing therefore

"'requires that neither party do anything which will interfere with or destroy each

party's reasonable expectations under the contract.'"[68]

### D.    Fraud

"To establish common-law fraud, a plaintiff must prove: (1) a material

misrepresentation of a presently existing or past fact; (2) knowledge or belief by

the defendant of its falsity; (3) an intention that the other person rely on it; (4)

reasonable reliance thereon by the other person; and (5) resulting damages."[69]

"Under New Jersey law, a tort remedy does not arise from a contractual

relationship unless the breaching party owes an independent duty imposed by

law."[70]

"[S]tatements will not form the basis of a fraud claim when they are

---

[67]    N.J. Stat. Ann. § 12A:2-103(1)(b) (West 2004).  *See also* U.C.C. § 2-103(1)(c) (2005).

[68]    *Lekki Capital Corp. v. Automatic Data Processing, Inc.*, No. 01 Civ. 7421, 2002 WL 987147, at *4 (S.D.N.Y. May 14, 2002) (quoting *Atlantic City Racing Assoc. v. Sonic Fin. Corp.*, 90 F. Supp. 2d 497, 510 (D.N.J. 2000).

[69]    *Banco Popular North Am. v. Gandi*, 184 N.J. 161, 172-73 (2005) (quotation marks omitted).

[70]    *Saltiel v. GSI Consultants, Inc.*, 170 N.J. 297, 280 (2002).

mere 'puffery' or are opinions as to future events."[71]  Although an opinion can constitute a misrepresentation, there is "a marked difference between what constitutes justifiable reliance upon statements of the maker's opinion and what constitutes justifiable reliance upon other representations."[72]

E.    **Negligent Misrepresentation**

"To establish a claim of negligent misrepresentation, a plaintiff must prove that an incorrect statement was negligently made and justifiably relied upon to recover damages for economic loss or injury sustained as a consequence of that reliance."[73]  "[N]egligence might be inferred from the falsity of the representation."[74]  "Because negligent misrepresentation does not require scienter as an element, it is easier to prove than fraud."[75]

F.    **Negligent Processing of Loan Modifications and Foreclosures**

A common law cause of action for negligence has four elements: "(1)

---

[71]    *Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir. 1994) (applying New York law).

[72]    Restatement (Second) of Torts § 525 cmt. d.

[73]    *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, No. 06-cv-5774, 2009 WL 2043604, at *32 (D.N.J. July 10, 2009) (citing *H. Rosenblum, Inc. v. Adler*, 93 N.J. 324, 334 (1983)).

[74]    *Rosenblum*, 93 N.J. at 334.

[75]    *Kaufman v. i-Stat Corp.*, 165 N.J. 94, 110 (2000).

-19-

a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages."[76]

### G.    Violation of the New York Deceptive Practices Act

The New York Deceptive Practices Act (the "DPA")[77] makes "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing or any service in this state" unlawful.[78]  The DPA allows "any person who has been injured by reason of any violation of [the DPA]" to bring an action for damages.  Under the statute, "[t]he court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated [the DPA]."[79]  The court may also "award reasonable attorney's fees to a prevailing plaintiff."[80]

To state a cause of action under the DPA a plaintiff must allege that "(1) the act or practice was consumer-oriented; (2) the act or practice was

---

[76]    *Polzo v. County of Essex*, 196 N.J. 569, 584 (2008).

[77]    N.Y. Gen. Bus. Law § 349 (McKinney 2004).

[78]    *Id.* § 349(a).

[79]    *Id.* § 349(h).

[80]    *Id.*

misleading in a material respect; and (3) the plaintiff was injured as a result."[81]  A

violation of the DPA does not require proof of the elements of common-law fraud

and thus "an action under [section] 349 is not subject to the

pleading-with-particularity requirements of Rule 9(b)."[82]

## H.    Violation of the New Jersey Consumer Fraud Act

The New Jersey Consumer Fraud Act (the "CFA") outlaws

> The act, use or employment . . . of any unconscionable
> commercial practice, deception, fraud, false pretense, false
> promise, misrepresentation, or the knowing, concealment,
> suppression, or omission of any material fact with the intent that
> others rely upon such concealment, suppression or omission, in
> connection with the sale or advertisement of any merchandise or
> real estate . . . .[83]

"To state a claim under the [CFA], a plaintiff must allege (1) a violation of the Act,

(2) that he or she suffered an ascertainable loss as a result of the unlawful conduct,

and (3) a causal relationship between the unlawful practice and the loss sustained

by plaintiff."[84]  New Jersey courts have repeatedly held that a "mortgage loan [is]

---

[81]    *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009) (citation omitted).

[82]    *Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005).

[83]    N.J. Stat. Ann. §§ 56:8-1 to -109 (West 2004).

[84]    *Meadowlands Invs., LLC v. CIBC World Mkts Corp.*, No. 04 Civ. 7328, 2005 WL 2347856, at *6 (S.D.N.Y. Sept. 22, 2005).

covered by the CFA's definitions of merchandise and advertisement . . . and that

[a] claim that the lender had engaged in an unconscionable commercial practice in

violation of N.J.S.A. 56:8-2 was for a jury to decide."[85]  "Claims under the CFA

are required to meet the particularity requirement of [Rule] 9(b)."[86]

## I.    Violation of the Fair Debt Collection Practices Act

Congress passed the Fair Debt Collection Practices Act (the

"FDCPA")[87] to "eliminate abusive debt collection practices by debt collectors

. . . ."[88]  The FDCPA prohibits the "use of any false representation or deceptive

means to collect or attempt to collect any debt . . . ,"[89] and of any "unfair or

unconscionable means to collect or attempt to collect any debt."[90]  A debt collector,

under the definition of the statute, is a person who collects or attempts to collect

---

[85]    *Gonzales v. Wilshire Credit Corp.*, 988 A.2d 567, 573 (N.J. Super. Ct. App. Div. 2010) (citing *Associates Home Equity Servs. v. Troup*, 778 A.2d 529 (N.J. Super. Ct. App. Div. 2001)).

[86]    *Daloisio v. Liberty Mut. Fire Ins. Co.*, 754 F. Supp. 2d 707, 709 (D.N.J. 2010).  *Accord Meadowlands*, 2005 WL 2347856, at *3.

[87]    15 U.S.C. §§ 1692-1692p (2009).

[88]    *Id.* § 1692(e).

[89]    *Id.* § 1692e(10).

[90]    *Id.* § 1692f.

"debts owed or due or asserted to be owed or due another."[91]  The FDCPA,

however, provides a number of exceptions to this definition.  One such exception is

"any person collecting or attempting to collect any debt owed or due or asserted to

be owed or due another to the extent such activity. . . (iii) concerns a debt which

was not in default at the time it was obtained by such person."[92]  "Thus, under

[section] 1692a(6)(F)(iii), the classification of debt collector depends upon the

status of a debt, rather than the type of collection activities used."[93]

## V.    DISCUSSION

### A.    Article III Standing

Defendants' argument that plaintiffs lack standing because their

homes have not actually been foreclosed upon lacks merit.[94]  "[T]he doctrine of

standing serves to identify those disputes which are appropriately resolved through

the judicial process."[95]  Plaintiffs here allege injury caused by defendants' actions,

---

[91]    *Id.* § 1692a(6).

[92]    *Id.* § 1692a(6)(F).  *See also Kesselman v. The Rawlings Co., LLC*, 668 F. Supp. 2d 604, 611-12 (S.D.N.Y. 2009).

[93]    *Alibrandi v. Financial Outsourcing Servs.*, 333 F.3d 82, 86 (3d Cir. 2003).

[94]    *See* Def. Mem. at 6-10.

[95]    *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990).

that are capable of redress by a judgment by this court.  Given, among other things,

the contractual privity between plaintiffs and Chase, and Chase's sending a notice

of intent to foreclose on plaintiffs' homes, plaintiffs clearly have standing to file

this suit.  Defendants argue that plaintiffs must wait until the completion of a

foreclosure sale before having standing to seek relief in the courts, because until a

foreclosure sale is completed, plaintiffs have not suffered any injury that is "not

conjectural or hypothetical."[96]  This is an argument that plaintiffs' claims are not

*ripe* for adjudication, rather than that these plaintiffs do not have *standing* to sue.

   Had plaintiffs merely been borrowers whose loans were not in default,

and who had not yet applied for modification, there is little doubt that there would

be no pending case or controversy between the parties.  But this is not a case that

rests on "contingent future events that may not occur as anticipated, or indeed may

not occur at all."[97]  Chase has notified plaintiffs that it intends to pursue foreclosure

---

[96]  Defendants cite *Waite v. Dunn*, No. 94 Civ. 07013, 1994 WL 714296, at *2 (S.D.N.Y Jan. 24, 2011), in support of their position that notice of intent to foreclose does not constitute imminent harm.  In *Waite*, however, the court denied a preliminary injunction because plaintiff failed to submit evidence of foreclosure, and because a monetary award could provide adequate relief.  In any event, defendants conflate standing with the evidence necessary to obtain a preliminary injunction.  "A preliminary injunction is an extraordinary remedy," *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 9 (2008), requiring a much higher showing than that required to establish standing to sue.  *Waite* is therefore inapposite.

[97]  *Texas v. United States*, 523 U.S. at 300.

of plaintiffs' homes, and can initiate foreclosure proceedings immediately.  The

outcome of such proceedings would not change plaintiffs' allegations of

defendants' wrongdoing.  Accordingly, "[p]ostponing consideration of the

questions presented, until a more concrete controversy arises"[98] would not in any

way aid the court.  Plaintiffs, therefore, have standing to pursue their claims.

### B.    Breach of Contract

Plaintiffs claim that Chase breached the TPP, the SPA, and their

original mortgage agreements.

### 1.    Trial Period Plan

Plaintiffs argue that the TPP agreements constitute valid contracts for

the permanent modification of plaintiffs' home loans, and that defendants breached

these contracts by not offering them permanent loan modifications.  Plaintiffs'

claim, however, is contradicted by the express terms of the TPP agreements, which

state that any permanent modification is subject to the subsequent approval of

Chase, and the receipt of a signed modification agreement.

Although the TPP does use some misleading language in stating that

Chase "will provide [the borrower] with a Home Affordable Modification

---

[98]    *Renne v. Geary*, 501 U.S. 312, 323 (1991).

Agreement"[99] if the borrower is in compliance with the TPP, it also unequivocally

states that the TPP does not constitute a permanent modification of the original

loan; by signing the TPP, plaintiffs attested that they

> understand that this Plan is not a modification of the Loan
> Documents and that the Loan Documents will not be modified
> unless and until (i) [they] meet all of the conditions required for
> modification, (ii) [they] receive a fully executed copy of a
> Modification Agreement, and (iii) the Modification Effective Date
> has passed.[100]

However, the TPP states that "[i]f prior to the Modification Effective Date . . . the

Lender does not provide [the borrower] with a fully executed copy of . . . the

Modification Agreement . . . the Loan documents will not be modified . . . ."[101]  By

signing the TPP, plaintiffs also "agree[d] that [Chase] will not be obligated or

bound to make any modification of the Loan Documents if [Chase] determines that

[plaintiff does] not qualify."[102]  The Amended Complaint fails to plead that

Thomas and Fields met "all of the conditions required for modification" and

plaintiffs clearly never received a "fully executed copy of the Modification

Agreement."

---

[99]     Thomas TPP, preamble.

[100]    *Id.* § 2.G.

[101]    *Id.* § 2.F.

[102]    *Id.*

Several courts have already held that the TPP does not constitute a

binding contract for permanent modification.[103]  The cases plaintiffs cite in

opposition are not only limited to one district, but are easily distinguishable.  In

*Bosque v. Wells Fargo*, plaintiffs' theory was "that the TPP is a contract governing

the three-month trial period, and that compliance with its obligations entitles

plaintiffs to either (1) a new contract with a permanent loan modification or (2) a

decision on whether plaintiffs are entitled to the permanent modification by the

modification effective date stated in the TPP."[104]  The *Bosque* court held that

"modified mortgage payments standing alone would likely not constitute

cognizable consideration under the TPP."[105]  However, the *Bosque* court held that

because plaintiffs "were required to provide documentation of their current

income, make legal representations about their personal circumstances, and agree

to undergo credit counseling if requested to do so" they had suffered a "new legal

---

[103]      *See, e.g.*, *Lund v. CitiMortgage, Inc.*, No. 10-CV-1167, 2011 WL
1873690, at *2 (D. Utah May 17, 2011); *Grill*, 2011 WL 127891, at *4; *Brown v.
Bank of N.Y. Mellon*, No. 10-CV-550, 2011 WL 206124, at *3 (W.D. Mich. Jan.
21, 2011); *Vida v. OneWest Bank*, No. 10-987, 2010 WL 5148473, at *15 (D. Or.
Dec. 13, 2010).

[104]      762 F. Supp. 2d 342, 352 (D. Mass. 2011).

[105]      *Id.*

detriment," and that plaintiffs therefore had sufficiently alleged consideration.[106]
Plaintiffs here do not allege that any such matters constituted consideration.

Under the TPP agreement[107] Chase would "suspend any scheduled
foreclosure sale" while plaintiffs met their obligations under the TPP.[108]  But
plaintiffs do not allege that Chase foreclosed on their homes while the TPP was in
effect, nor that Chase did so before it notified plaintiffs that their applications for
permanent modification had been denied.  Thus Chase fulfilled all of its
obligations under the TPP.  Accordingly, plaintiffs' claim for breach of the TPP
agreement is dismissed.

## 2.    Service Provider Agreement

Plaintiffs cannot enforce the provisions of the SPA between JP
Morgan and Fannie Mae.  Several district courts have held that borrowers have no
third-party right to enforce the SPA.[109]  Contrary to plaintiffs' assertion that "the

---

[106]    *Id.*

[107]    I assume the truth of the Amended Complaint's allegation that
Fields's TPP agreement is identical to Thomas's.  *See* FAC ¶ 205.

[108]    Thomas TPP § 2.B.

[109]    *Edwards v. Aurora Loan Servs., LLC*, --- F. Supp. 2d ----, No. 09 Civ.
2100, 2011 WL 2340939, at *4-*6 (D.D.C. June 14, 2011).  *Accord Grill v. BAC
Home Loans Servicing*, No. 10-CV-03057, 2011 WL 127891, at *5-*7 (E.D. Cal.
Jan. 14, 2011) (collecting cases).

SPA and the incorporated Program Documentation constitute a contract for which [p]laintiffs and the Class are intended beneficiaries,"[110] the SPA specifically states that it "shall inure to the benefit of and be binding upon the parties to the Agreement,"[111] JP Morgan and Fannie Mae.  Allowing plaintiffs to enforce the SPA would contradict the express terms of the agreement and would "open the door to potentially 3-4 million homeowners filing individual claims."[112]  Plaintiffs' claim for breach of the SPA is therefore dismissed.

### 3.    Mortgage Agreement

Plaintiffs allege that Chase breached the terms of the original loan documents by "foreclosing on loans that were not in default."[113]  Although the mortgage agreements between plaintiffs and Chase constitute enforceable contracts, the claim fails.  The TPP agreement states that making TPP payments "does not constitute a cure of [borrower's] default under the Loan Documents . . . ."[114]  Thus, "by alleging that [they] paid reduced monthly payments under the

---

[110]    FAC ¶ 241.

[111]    SPA § 10.F.

[112]    *Marks v. Bank of Am., N.A.*, No. 10-cv-08039, 2010 WL 2572988, at *4 (D. Ariz. June 22, 2010).

[113]    FAC ¶ 239.

[114]    Ex. E to FAC, at 2.

[TPP], Plaintiff[s] admit[] that [they were] not current on [their] mortgage[s]."[115]
Plaintiffs do not contend that, after learning of Chase's rejection of their
applications, they cured any payment shortfall under their original mortgages.  As a
result, plaintiffs fail to allege that they have performed their own contractual
obligations and are therefore estopped from seeking damages for breach by the
other party.  Plaintiffs' claim for breach of the terms of the original loan documents
is therefore dismissed.

### C.    Promissory Estoppel

In the alternative, plaintiffs seek to recover damages based on
promissory estoppel, alleging that plaintiffs "forewent other remedies" such as
bankruptcy or selling their homes, because defendants "by way of the TPP
agreements, made representation[s] to [p]laintiffs . . . that if they executed and
returned the TPP agreements with supporting documentation, they would receive a
permanent HAMP modification."[116]  Plaintiffs' claim fails.  As discussed above,
the language of the TPP agreements was unequivocal in stating that they did not

---

[115]    *Davis v. Citimortgage, Inc.*, No. 10-12136, 2011 WL 891209, at *3
(E.D. Mich. Mar. 11, 2011).

[116]    FAC ¶ 258.

constitute a permanent modification of plaintiffs' loans.[117]  Accordingly, plaintiffs'

promissory estoppel claim is dismissed.

### D.    Breach of Covenant of Good Faith and Fair Dealing

Plaintiffs also claim that JP Morgan, by entering into the SPA and

receiving funds under TARP from the Department of the Treasury, covenanted on

behalf of itself and its subsidiaries to administer its usual contractual obligations

with principles of good faith and fair dealing.[118]  Plaintiffs further claim that JP

Morgan had an "implied duty to insure that its loan modification and foreclosure

procedures were not fraudulent or unconscionable with respect to borrowers."[119]

Plaintiffs claim that these covenants were breached by defendants because Chase,

among other things, failed to ensure that it collected or attempted to collect the

proper sums from borrowers.[120]

---

[117]    I note that none of the cases relied on by plaintiffs discusses the relevant language quoted from the TPP in part V.B.3, supra.  *See Jackson v. Ocwen Loan Servicing, LLC*, No. 10–cv–00711, 2011 WL 587587, at *3 (E.D. Cal. Feb. 9, 2011); *Bosque*, 762 F. Supp. 2d at 351-53; *Durmic v. J.P. Morgan Chase Bank, NA*, No. 10-CV-10380, 2010 WL 4825632, at *5 (D. Mass. Nov. 24, 2010); *Hanson v. Wells Fargo Home Mortg.*, No. 10CV00318, 2010 WL 3310615, at *2-3 (E.D. Ark. Aug. 18, 2010).

[118]    *See* FAC ¶ 267.

[119]    *Id.* ¶ 266.

[120]    *See id.* ¶ 270

As discussed above, plaintiffs were neither parties to the SPA nor intended third-party beneficiaries of that agreement.  As such, they cannot enforce any covenant of that agreement, express or implied.  The only agreement to which the plaintiffs were parties are the original loan documents.  But plaintiffs' allegations of breach of the covenant of good faith and fair dealing concern JP Morgan's obligations under the SPA, *not under the original loan documents*.

The only alleged breach of the covenant of good faith and fair dealing concerning the *original* loan documents are that Chase failed to take reasonable measures to collect the proper sums from plaintiffs and initiated foreclosure proceedings without cause.  But the sums collected from plaintiffs either were due under their original mortgages or represented lower sums paid in accordance with the TPP agreements.  Further, as discussed earlier, plaintiffs breached the express terms of the original loan documents, and defendants therefore had reason to notify plaintiffs of their intent to foreclose.  Plaintiffs' claim for breach of the covenant of good faith and fair dealing is therefore dismissed.

### E.    Fraud and Negligent Misrepresentation

Plaintiffs assert claims for fraud and for negligent misrepresentation, alleging that defendants knowingly, recklessly, or negligently "misrepresented and/or failed to disclose material facts relating to [defendants'] loan modification

-32-

and foreclosure processes."[121]  Plaintiffs allege that due to their reliance on Chase's

misrepresentations they suffered injury in the form of late fees and charges, and

that they paid attorneys' fees as a result of challenging those costs.[122]

Plaintiffs "may not recover from [defendants] under a tort theory

alleging 'malicious' or 'negligent' breach" of contract.[123]  However, the Amended

Complaint alleges that in December 2010, a Chase agent falsely instructed Fields

that he "should miss his January and February payments in order to maintain his

eligibility for a modification"[124] – a non-contract-based claim.  Although

defendants argue that "vague and ill-defined opinions are not assurances of fact

and thus" do not constitute a basis for a claim of fraud or negligent

---

[121]    *Id.* ¶¶ 275, 285.

[122]    *See id.* ¶ 299.

[123]    *International Minerals and Mining Corp. v. Citicorp N. Am.*, 736 F.
Supp. 587, 597 (D.N.J. 1990).

[124]    FAC ¶ 203.  Plaintiffs also allege that Chase misrepresented the time
frame within which modification applications would be processed and erroneously
instructed plaintiffs to submit documents Chase already had in its possession.
However, the Amended Complaint fails to plead how plaintiffs relied on either of
these two misrepresentations and fails to plead any injury suffered by plaintiffs as a
result.  All other allegations of misrepresentations seem to relate only to putative
class members, but not to plaintiffs.

misrepresentation,[125] the issue is whether the statement made was so vague and ill-defined that it was unreasonable for a borrower to rely on it.  Given the nature of the relationship between the parties, it cannot be said that reliance was unreasonable as a matter of law.  "An instruction by a bank not to pay may reasonably be understood by a borrower as a representation that non-payment is acceptable to the bank and will not have negative consequences."[126]  The Amended Complaint, therefore, pleads with sufficient particularity that Chase made a misrepresentation of a material fact, and that it induced reasonable reliance, to plaintiffs' detriment.

Plaintiffs fail, however, to adequately plead that defendants acted with fraudulent intent.  Plaintiffs fail to allege facts that show that "defendants had both motive and opportunity to commit fraud" or to point to any "strong circumstantial evidence of conscious misbehavior."[127]  The Amended Complaint contains only conclusory statements that defendants "knew that [their] misrepresentations . . .

---

[125]     Def. Mem. at 24 (quoting *Alexander v. CIGNA Corp.*, 991 F. Supp 427, 435 (D.N.J. 1998)).

[126]     *Fitzgerald v. Chase Home Finance, LLC*, No. 10 Civ. 4148, at *10 (S.D.N.Y. Feb. 28, 2011).

[127]     *Lerner*, 459 F.3d at 290.

were false"[128] and that defendants misrepresented the facts "with the intention that [p]laintiffs and Class Members rely on their representations."[129]   Plaintiffs fail to plead any facts that would lead to a "strong inference" that Chase acted with fraudulent intent in making these misrepresentations.   Plaintiffs' fraud claim is therefore dismissed.   Because negligent misrepresentation does not require scienter, however, plaintiffs have adequately pleaded all the elements of that claim. Accordingly, defendants' motion to dismiss plaintiffs' negligent misrepresentation claim is denied.

### F.   Negligent Processing of Loan Modifications and Foreclosures

Plaintiffs claim that defendants owe them "a duty of reasonable care in the processing and determination of the loan modification applications and the processing of their foreclosures"[130] and that defendants breached this duty by "failing to properly evaluate [p]laintiffs' and Class Members' loan modification applications and foreclosures."[131]   *First*, as discussed above, the SPA and the other terms of HAMP do not impose a duty on defendants with respect to borrowers.

---

[128]   FAC ¶ 277.

[129]   *Id.* ¶ 278.

[130]   *Id.* ¶ 290.

[131]   *Id.* ¶ 291.

*Second*, it is well-established that "a bank does not owe a duty of care to a borrower, even if the borrower is a consumer."[132]  Plaintiffs' negligence claim is therefore dismissed.

### G.    Violation of the New York Deceptive Practices Act

Plaintiffs' claim that defendants violated section 349 of New York's General Business Law fails because plaintiffs do not allege that any consumer-oriented conduct took place in New York.  Section 349(a) outlaws "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing or any service *in this state*."[133]  Plaintiffs are residents of New Jersey, and the mortgages at issue in this case are (i) for homes located in New Jersey, and (ii) were loaned by branches located in New Jersey.  Plaintiffs do not allege that defendants committed any acts that caused injury to plaintiffs in New York.

To the extent that plaintiffs allege that they were injured in New Jersey by allegedly deceptive practices devised or originating in New York, plaintiffs' claim under section 349 also fails.  "The phrase 'deceptive acts or practices' under the statute is not the mere invention of a scheme or marketing

---

[132]    *Shinn v. Champion Mortgage Co.*, No. 09-cv-00013, 2010 WL 500410, at *4 (D.N.J. Feb. 5, 2010) (citing *United Jersey Bank v. Kensey*, 306 N.J.Super. 540, 553 (N.J. Super. Ct. App. Div. 1997)).

[133]    N.Y. Gen. Bus. Law § 349(a) (emphasis added).

strategy, but the actual misrepresentation or omission to a consumer."[134]  The

statute "was not intended to police the out-of-state transactions of New York

companies."[135]  Instead, the legislative history of the statute makes clear that it was

intended to protect consumers in the state of New York.[136]  To expand this

protection to consumers in other states would subject New York businesses to

almost unlimited liability.  Not only is this a burden on the courts, but would

undermine other states' initiatives to protect their consumers in a way they think

most appropriate.  Plaintiffs' claim for violation of the DPA is therefore dismissed.

### H.    Violation of the New Jersey Consumer Fraud Act

Plaintiffs allege that "the acts and practices of Defendants" as set forth

elsewhere in the Amended Complaint, violate the CFA.[137] As discussed earlier,

---

[134]    *Goshen v. Mutual Life Ins. Co. of New York*, 98 N.Y.2d 314, 325
(2002) (dismissing Florida plaintiff from an action against New York insurer
where policy was purchased and paid for in Florida).  *Accord Wiener v.
Unumprovident Corp.*, 202 F. Supp. 2d 116, 120 (S.D.N.Y. 2002) (dismissing claim
because "[w]hile it appears that plaintiff's application for the insurance policies
was submitted in New York, she is a New Jersey resident and received her benefits
in New Jersey").

[135]    *Goshen*, 98 N.Y.2d at 325.

[136]    *See id.* (discussing legislative history and underlying public policy
rationale of section 349).

[137]    FAC ¶¶ 298-301.  Defendants seek to dismiss this claim on the ground
that "where, as here 'the factual allegations of the cause of action are . . . scattered
throughout the complaint . . .' dismissal for failure to satisfy Rule 8(a)(2) is

plaintiffs have alleged that defendants made a material misrepresentation with sufficient particularity to satisfy Rule 9(b).  Unlike a common-law fraud claim, a claim for violation of the CFA does not require intent because the statute imposes strict liability if the claimed CFA violation is the result of an affirmative act.[138]

Defendants' argument that plaintiffs' claim fails because "it is essentially a breach of contract claim"[139] clearly contradicts the facts of this case. As discussed above, plaintiffs do not state a prima facie case for breach of contract. Plaintiffs do allege that (1) Chase made a false representation that borrowers must

---

proper."  Def. Mem. at 22 (quoting *San Diego Home Solutions v. Reconstruct Co.*, No. 08 cv 1970, 2008 WL 5209972, at *2 (S.D. Cal. Dec. 10, 2008)).  "A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion."  Fed. R. Civ. P. 10(c).  This rule is not made void by the *Twombly-Iqbal* "plausibility" requirement, or by Rule 9(b)'s particularity requirement.  Plaintiffs are not required to restate the same facts outlined in the section for common-law fraud for each subsequent claim, and the court will not dismiss the claim simply because plaintiffs incorporate by reference facts stated elsewhere in the Amended Complaint.  The particularity requirement of Rule 9(b) has three purposes: (1) to put the defendant on notice of the details of the claims against him, (2) to protect a defendant's reputation and goodwill from unfounded allegations, and (3) to prevent strike suits.  *See Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004).  The Amended Complaint states facts with sufficient particularity to accomplish these goals.

[138]     *See Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 556 (2009).

[139]     Def. Mem. at 26 (incorporating by reference Memorandum in Support of Citimortgage, Inc.'s Motion to Dismiss, *Costigan v. Citimortgage, Inc.*, No. 10 Civ. 8776, at 22 (quoting *Carmen v. Metrocities Mortg.*, No. 08-cv-2729, 2010 WL 421115, at *7 n.7 (D.N.J. Feb. 1, 2007))).

default on their loans to be eligible for modification, (2) that plaintiffs suffered ascertainable injury in the form of late fees, interest, and attorney's fees to challenge imposition of such costs, and that (3) that defendants' behavior caused them to incur these costs.[140]  Accordingly, defendants' motion to dismiss this claim is denied.

## I.    Violation of the Federal Debt Collection Practices Act

Plaintiffs allege that defendants violated the FDCPA by engaging "in a pattern and practice of filing false, deceptive, misleading, and perjured affidavits in connection with foreclosure proceedings."[141]  But the FDCPA does not cover the facts of this case.  A "debt collector" under the statute means anyone who collects "debts owed . . . another" and excludes collecting a debt to the extent the collection "concerns a debt which *was not in default* at the time it was obtained by such person."[142]  With regards to Thomas, Chase is attempting to collect the debt on its own behalf.  Moreover, the FAC does not allege that the loans of the named

---

[140]    *See Banco Popular*, 184 N.J. at 172-73 (outlining the elements of a claim under the CFA).  *See also Morris v. BAC Home Loans Servicing, L.P.*, --- F. Supp. 2d ----, 2011 WL 1226974, at *1 (D. Mass. 2011) (holding that HAMP violations can give rise to a claim under a similar Massachusetts statute).

[141]    FAC ¶ 305.

[142]    15 U.S.C. § 1692a(F) (emphasis added).

plaintiffs were in default at the time Chase "obtained" those loans.[143]  As a result, Chase is excluded from the definition of "debt collector" under the statute.

Furthermore, defendants' allegedly "filing false, deceptive, misleading, and perjured affidavits in connection with foreclosure proceedings" is irrelevant to plaintiffs in this case.  Plaintiffs do not allege that such affidavits were used in foreclosure proceedings in which any plaintiff was a party.  Indeed, no plaintiff was a party to any foreclosure proceedings.  As plaintiffs concede, any alleged injuries must pertain to the named plaintiffs.[144]  Plaintiffs' claim under the FDCPA is therefore dismissed.

## J.    Leave to Replead

Leave to replead is generally granted unless it would be futile to permit plaintiffs to amend.  Here, plaintiffs may be able to allege additional facts that would support a strong inference of fraudulent intent. Likewise, plaintiffs could allege additional facts that would allow them to state a claim for breach of the original loan agreements.

However, repleading plaintiffs' other claims would be futile. Plaintiffs have no standing to enforce the SPA, rendering futile any attempt to

---

[143]    *Id.* § 1692a(F)(iii).

[144]    *See Lewis*, 518 U.S. at 358.

replead their claims for breach of the SPA or for breach of the covenant of good faith and fair dealing. Given that the TPPs unequivocally did not grant plaintiffs a permanent modification, repleading plaintiffs' claim for breach of the TPP and for promissory estoppel likewise would be futile. New Jersey law holds that defendants do not owe a duty of care to borrowers beyond the terms of their contract, defeating any negligence claim. And because plaintiffs are New Jersey residents who conducted all of their transactions with defendants in New Jersey repleading their claim under the DPA would also be futile. Additionally, defendants are explicitly excluded from the statutory language of the FDCPA. Accordingly, these claims are dismissed with prejudice. Plaintiffs may within thirty (30) days of the date of this Order file a second amended complaint with respect to their claims for (i) breach of the original mortgage agreements and (ii) fraud. If plaintiffs fail to do so, all claims dismissed herein will be dismissed with prejudice.

## VI.   CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted without prejudice as to plaintiffs' claims for (i) breach of contract of the original mortgage agreements and (ii) fraud. Defendants' motion to dismiss is granted with prejudice as to plaintiffs' claims for (i) breach of the SPA and the TPP agreements,

(ii) promissory estoppel, (iii) breach of the covenant of good faith and fair dealing,

(iv) negligence, (v) violation of the DPA, and (vi) violation of the FDCPA.

Defendants' motion is denied as to plaintiffs' claims for (i) negligent

misrepresentation and (ii) violation of the CFA.  The Clerk of the Court is directed

to close this motion [docket #25] as well as defendants' earlier motion [docket

#11] which was withdrawn pursuant to the parties' stipulation but not closed.  A

conference is scheduled for September 12, 2011, at 4:00 p.m.


SO ORDERED:


Shira A. Scheindlin
U.S.D.J.


Dated:        New York, New York
              July 29, 2011


-42-

**- Appearances -**

**For Plaintiffs:**

Preetpal Grewal, Esq.
Cuneo Gilbert & LaDuca, LLP
620 Fifth Avenue
6th Floor
New York, NY 10020
(202) 789-3960

Alexandra Coler Warren, Esq.
Cuneo Gilbert & LaDuca, LLP
106-A South Columbus Street
Alexandra, VA 22314
(202) 789-3960
Fax: (202)-789-1813

Charles Joseph LaDuca, Esq.
Brendan S. Thompson, Esq.
Matthew L. Wiener, Esq.
Cuneo Gilbert & LaDuca, LLP
507 C Street, NE
Washington, DC 20002
(202) 789-3960

David Ian Greenberger, Esq.
Matthew James McDonald, Esq.
Liddle & Robinson, LLP
800 Third Avenue, 8th Floor
New York, NY 10022
(212) 687-8500

Gerald W. Crawford, Esq.
Nicholas J. Mauro, Esq.
Crawford Quilty & Mauro Law Firm
1701 Ruan Center
Des Moines, IA 50309
(515) 245-5420

J. Barton Gloperud, Esq.
Hudson Mallaney Shindler & Anderson P.C.
5015 Grand Ridge Drive Suite 100
West Des Moines, IA 50265
(515) 223-4567

Jonathan Minkove, Esq.
Lawrence John Friscia, Esq.
Friscia & Associates, LLC
17 Academy Street, Penthouse
Newark, NJ 07102
(973) 500-8024

Michael Andrew McShane, Esq.
Audet & Partners LLP
221 Main St. , Suite 1460
San Francisco, CA 94105
(415) 568-2555

Robert K. Shelquist, Esq.
Lockridge, Grindal, Nauen, P.L.L.P.
100 Washington Avenue S.
Minneapolis, MN 55401
(612) 339-6900

**For Defendants:**

Jessica Kaufman, Esq.
Jamie A. Levitt, Esq.
Morrison & Foerster LLP (NYC)
1290 Avenue of the Americas
New York, NY 10104
(212) 336-4257